FILED

PETER SZANTO 949-887-2369
P. O. BOX 14894
Irvine CA 92623

2015 FEB 11 PM 1:21

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIF.
SANTA ANA

BY:_____

# United States District Court
### Central District of California – Santa Ana

Peter Szanto, plaintiff

V.

a) Persolve, LLC (individually and
   DBA Account Resolution Associates),

b) Account Resolution Associates,

c) Victor Alexander Szanto,

d) Anthony Szanto (aka Tony Szanto),

e) Internal Revenue Service,
   defendants

**\*\* JURY is REQUESTED \*\***

Case No.:  SACV15:00241 AG (DFMX)

# COMPLAINT
# for DAMAGES

## based on:

1) Fraud (knowing false and
fraudulent creation of internal
revenue debt by defendants
attributable to plaintiff)

2) Fraudulent Transfer

3) Identity Theft

4) Intentional Infliction of
   Emotional Distress

**Jurisdiction based on
28 U.S.C.A. § 1340 exclusive
Federal jurisdiction over
internal revenue**

Complaint - page 1

1. This matter is before this Court upon the basis of 28 USC § 1340 which states:

   > "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue"

2. On, or about, 12-19-2014, plaintiff received from the Internal Revenue Service (IRS) [EXHIBIT A] regarding Income Tax Examination Changes.

3. The greatest proportion of said IRS changes is comprised of cancellation of debt income in the amount of $292,868.$^{00}$

4. The fundamental basis of the Internal Revenue Service's claim against plaintiff is that: a) plaintiff obtained money, b) plaintiff did not repay that money, c) the entities who provided money to plaintiff thereafter wrote-off plaintiff's indebtedness, d) now the Internal Revenue Service contends that plaintiff must pay income tax on that amount of debt which was cancelled.

5. Plaintiff's reaction to all these allegations has been utter shock, dismay and confusion.

6. After receiving the tax change notice, plaintiff has been emotionally and physically incapacitated.

7. Plaintiff required and obtained medical treatment for the physical pain and emotional anguished engendered by the Internal Revenue Service notice.

8.  Plaintiff is unaware of any debt which, throughout his life, he has ever failed to repay, or which he is currently servicing to repay.

9.  And, if any person / entity has any valid claim against plaintiff, plaintiff is available to discuss any such claim -- immediately!!

10.  Since having received notice of this potential tax liability incident, plaintiff has taken steps to effect diligent inquiry of the facts and of the nature of the allegations against him.

11.  Plaintiff's investigations and examinations have determined that most likely the persons and events which caused him to be accused of failing to repay debts which were later written-off occurred most probably through the actions of plaintiff's natural brothers Victor Alexander Szanto and Anthony Szanto – who are are both over 21 years of age and named as defendants herein.

12.  Two other defendants potentially liable for the indebtedness attributed to plaintiff are two business entities: Persolve, LLC (individually and DBA Account Resolution Associates). (The form of business structure of these entities is presently unknown.)

13.  These business entities variously interchange their names and identities, and it is unclear of the relationship between the two.

14.  Plaintiff thereon contends that the defendants: Victor Szanto, Anthony Szanto, Persolve and /or Account Resolution Associates -- individually, jointly or in concert with one another

intentionally used, misappropriated and / or otherwise employed

plaintiff's identity (name, social security number, driver's license

and / or other identifying information) so as to create borrowings

and debt seemingly attributable to plaintiff – but from which

defendants falsely obtained moneys in plaintiff's name.

15.  Plaintiff contends that thereafter Victor Szanto, Anthony Szanto,

Persolve and /or Account Resolution Associates failed to repay

said debts and borrowings, thereby creating upon the books

and accounts of the creditors liabilities / debts in the name of

plaintiff.

16.  After investigation, Peter Szanto contends that the amount

upon which the Internal Revenue Service seeks payment

represents various bank accounts / credit accounts, opened by

others, in Peter Szanto's name.

17.  In that regard, Peter Szanto contends that persons and or

entities who would be motivated to – and who would have the

capacity, opportunity and motive -- to steal Peter Szanto's

identity are Persolve and / or Victor Alexander Szanto and / or

Anthony Szanto.

18.  Victor Szanto and Anthony Szanto are Peter Szanto's natural

brothers who have demonstrated knowledge, motivation,

larcenous intent and capacity regarding the acquisition of money,

assets and property, without permission, belonging to Peter

Szanto.

Complaint – page 4

19. Thereon, Peter Szanto makes the following claims based on the fact that the Internal Revenue Service's claim attests to, and evidences, theft of Peter Szanto's identity --- and therefore, some party or parties must be responsible for that identity theft.

20. Plaintiff's contention regarding the Internal Revenue Service is that the IRS knowingly facilitated thefts of Peter Szanto's identity by the other defendants by knowingly failing to take steps to stop said identity theft – by assessing liability to Peter Szanto with any proper investigative process.

21. Upon these facts, and further facts to be incorporated as they become know, plaintiff asserts the following causes of action.

22. Plaintiff retains all right to amend this claim as to both parties and additional causes of action.

## First Cause of Action for Identity Theft

23. False impersonation of another for fraudulent and improper purposes is not a new phenomenon.

24. One origin of these despicable acts is recorded (approximately 2300 BCE) in the Torah (ie, the first five books of the Bible (wherein Jacob impersonates Essau to receive Issac's blessing, birthright and inheritance: *Genesis* 27:34-40).

25. The current law is codified in California Penal Code, § 529 (originally enacted in 1872).

26. The advent of the Information Age and computerized databases have helped make identity theft and related fraudulent behaviors among the fastest growing forms of white collar crimes. (*California Banker*, Vol. XV, No. 4, p. 9 (1998).)

27. The USA's three largest credit reporting agencies, Experian, TransUnion, and Equifax, reported an increase in identity fraud complaints from 12,000 in 1992 to 500,000 in 1998, and the U.S. Social Security Administration received more than 30,000 complaints in 1999 regarding misuse of Social Security numbers, most involving identity theft, up from 7,868 in 1997. (*New York Times*, Apr. 3, 2000, p. B-1.)

28. The numbers for 2003 increased well beyond these levels.

29. In 1998 the U.S. Congress, following the lead of Arizona and California, promulgated a federal crime of identity theft and required the Federal Trade Commission to establish an identity theft database and consumer clearinghouse.

30. The laws upon which the instant civil claims made herein are "The Identity Theft and Assumption Deterrence Act of 1998," 18 U.S.C. § 1028:

"(a) Whoever, in a circumstance described in subsection (c) of this section--

(1) knowingly and without lawful authority produces an identification document, authentication feature, or a false identification document;

(2) knowingly transfers an identification document, authentication feature, or a false identification document knowing that such document or feature was stolen or produced without lawful authority;

(3) knowingly possesses with intent to use unlawfully or transfer unlawfully five or more identification documents (other than those issued lawfully for the use of the possessor), authentication features, or false identification documents;

(4) knowingly possesses an identification document (other than one issued lawfully for the use of the possessor), authentication feature, or a false identification document, with the intent such document or feature be used to defraud the United States;

(5) knowingly produces, transfers, or possesses a document-making implement or authentication feature with the intent such document-making implement or authentication feature will be used in the production of a false identification document or another document-making implement or authentication feature which will be so used;

(6) knowingly possesses an identification document or authentication feature that is or appears to be an identification document or authentication feature of the United States or a sponsoring entity of an event designated as a special event of national significance which is stolen or produced without lawful authority knowing that such document or feature was stolen or produced without such authority;

(7) knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under any applicable State or local law; or

(8) knowingly traffics in false or actual authentication features for use in false identification documents, document-making implements, or means of identification;

shall be punished as provided in subsection (b) of this section.

(b) The punishment for an offense under subsection (a) of this section is—

(1) except as provided in paragraphs (3) and (4), a fine under this title or imprisonment for not more than 15 years, or both, if the offense is—

Complaint - page 7

(A) the production or transfer of an identification document, authentication feature, or false identification document that is or appears to be--

(i) an identification document or authentication feature issued by or under the authority of the United States; or

(ii) a birth certificate, or a driver's license or personal identification card;

(B) the production or transfer of more than five identification documents, authentication features, or false identification documents;

(C) an offense under paragraph (5) of such subsection; or

(D) an offense under paragraph (7) of such subsection that involves the transfer, possession, or use of 1 or more means of identification if, as a result of the offense, any individual committing the offense obtains anything of value aggregating $1,000 or more during any 1-year period;

(2) except as provided in paragraphs (3) and (4), a fine under this title or imprisonment for not more than 5 years, or both, if the offense is--

(A) any other production, transfer, or use of a means of identification, an identification document,, authentication feature, or a false identification document; or

(B) an offense under paragraph (3) or (7) of such subsection;

(3) a fine under this title or imprisonment for not more than 20 years, or both, if the offense is committed--

(A) to facilitate a drug trafficking crime (as defined in section 929(a)(2));

(B) in connection with a crime of violence (as defined in section 924(c)(3)); or

(C) after a prior conviction under this section becomes final;

(4) a fine under this title or imprisonment for not more than 30 years, or both, if the offense is committed to facilitate an act of domestic terrorism (as defined under section 2331(5) of this title) or an act of international terrorism (as defined in section 2331(1) of this title);

(5) in the case of any offense under subsection (a), forfeiture to the United States of any personal property used or intended to be used to commit the offense; and

(6) a fine under this title or imprisonment for not more than one year, or both, in any other case.

(c) The circumstance referred to in subsection (a) of this section is that--

(1) the identification document, authentication feature, or false identification document is or appears to be issued by or under the authority of the United States or a sponsoring entity of an event designated as a special event of national significance or the document-making implement is designed or suited for making such an identification document, authentication feature, or false identification document;

(2) the offense is an offense under subsection (a) (4) of this section; or

(3) either--

(A) the production, transfer, possession, or use prohibited by this section is in or affects interstate or foreign commerce, including the transfer of a document by electronic means; or

(B) the means of identification, identification document, false identification document, or document-making implement is transported in the mail in the course of the production, transfer, possession, or use prohibited by this section.

(d) In this section and section 1028A--

(1) the term "authentication feature" means any hologram, watermark, certification, symbol, code, image, sequence of numbers or letters, or other feature that either individually or in combination with another feature is used by the issuing authority on an identification document, document-making implement, or means of identification to determine if the document is counterfeit, altered, or otherwise falsified;

(2) the term "document-making implement" means any implement, impression, template, computer file, computer disc, electronic device, or computer hardware or software, that is specifically configured or

primarily used for making an identification document, a false identification document, or another document-making implement;

(3) the term "identification document" means a document made or issued by or under the authority of the United States Government, a State, political subdivision of a State, a sponsoring entity of an event designated as a special event of national significance, a foreign government, political subdivision of a foreign government, an international governmental or an international quasi-governmental organization which, when completed with information concerning a particular individual, is of a type intended or commonly accepted for the purpose of identification of individuals;

(4) the term "false identification document" means a document of a type intended or commonly accepted for the purposes of identification of individuals that--

(A) is not issued by or under the authority of a governmental entity or was issued under the authority of a governmental entity but was subsequently altered for purposes of deceit; and

(B) appears to be issued by or under the authority of the United States Government, a State, a political subdivision of a State, a sponsoring entity of an event designated by the President as a special event of national significance, a foreign government, a political subdivision of a foreign government, or an international governmental or quasi-governmental organization;

(5) the term "false authentication feature" means an authentication feature that--

(A) is genuine in origin, but, without the authorization of the issuing authority, has been tampered with or altered for purposes of deceit;

(B) is genuine, but has been distributed, or is intended for distribution, without the authorization of the issuing authority and not in connection with a lawfully made identification document, document-making implement, or means of identification to which such authentication feature is intended to be affixed or embedded by the respective issuing authority; or

(C) appears to be genuine, but is not;

(6) the term "issuing authority"—

(A) means any governmental entity or agency that is authorized to issue identification documents, means of identification, or authentication features; and

(B) includes the United States Government, a State, a political subdivision of a State, a sponsoring entity of an event designated by the President as a special event of national significance, a foreign government, a political subdivision of a foreign government, or an international government or quasi-governmental organization;

(7) the term "means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any—

(A) name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number;

(B) unique biometric data, such as fingerprint, voice print, retina or iris image, or other unique physical representation;

(C) unique electronic identification number, address, or routing code; or

(D) telecommunication identifying information or access device (as defined in section 1029(e));

(8) the term "personal identification card" means an identification document issued by a State or local government solely for the purpose of identification;

(9) the term "produce" includes alter, authenticate, or assemble;

(10) the term "transfer" includes selecting an identification document, false identification document, or document-making implement and placing or directing the placement of such identification document, false identification document, or document-making implement on an online location where it is available to others;

Complaint - page 11

(11) the term "State" includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any other commonwealth, possession, or territory of the United States; and

(12) the term "traffic" means--

(A) to transport, transfer, or otherwise dispose of, to another, as consideration for anything of value; or

(B) to make or obtain control of with intent to so transport, transfer, or otherwise dispose of.

(e) This section does not prohibit any lawfully authorized investigative, protective, or intelligence activity of a law enforcement agency of the United States, a State, or a political subdivision of a State, or of an intelligence agency of the United States, or any activity authorized under chapter 224 of this title.

(f) Attempt and conspiracy.--Any person who attempts or conspires to commit any offense under this section shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

(g) Forfeiture procedures.--The forfeiture of property under this section, including any seizure and disposition of the property and any related judicial or administrative proceeding, shall be governed by the provisions of section 413 (other than subsection (d) of that section) of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 853).

(h) Forfeiture; disposition.--In the circumstance in which any person is convicted of a violation of subsection (a), the court shall order, in addition to the penalty prescribed, the forfeiture and destruction or other disposition of all illicit authentication features, identification documents, document-making implements, or means of identification.

(i) Rule of construction.--For purpose of subsection (a)(7), a single identification document or false identification document that contains 1 or more means of identification shall be construed to be 1 means of identification."

Complaint - page 12

31. The availability of civil penalties under these laws for identity theft has been repeatedly affirmed: *Satey v. JPMorgan Chase & Co.* (9th CA 2008) 521 F.3[rd] 1087, *U.S. v. Maciel-Alcala* (9th CA 2010) 612 F.3[rd] 1092, *Coto Settlement v. Eisenberg* (9th CA 2010) 593 F.3[rd] 1031.

32. The elements necessary to prove and maintain this civil cause of action for identity theft are:

   a) improper use of plaintiff's identity without permission. Here plaintiff contends that defendants used plaintiff's identity to obtain money by opening bank accounts in Peter Szanto's name which became debt and subsequent tax liability against Peter Szanto.

   b) proximate cause of financial injury or harm to plaintiff. Here, Peter Szanto's financial life has been ruined by the fact that defendants have stolen his identity and obtained money using plaintiff's name and identity. Likewise, plaintiff is still liable for taxes on debt cancellation of these bank and credit accounts.

      i. proof of injury to reputation shall also be sufficient to maintain a civil action for restitution for identity theft. Peter Szanto will demonstrate such injury to his reputation by proof (eg, diminished FICO score, etc.)

Complaint - page 13

33. In this action, Peter Szanto will demonstrate by proof that persons and / or entities responsible for theft of his identity were Persolve, Account Resolution Associates and / or Victor Szanto and / or Anthony Szanto.

34. Peter Szanto will demonstrate, by proof of all facts alleged, that he has been harmed and injured in an amount greater than $100,000 by way of the defendants' actions, because plaintiff's identity was used and employed to create indebtedness and tax liability which plaintiff must now seek to have abated.

### Second Cause of Action for Fraud

37 . The elements to maintain a cause of action for fraud are
   a) misrepresentation, ie, false representation, concealment or non-disclosure.
   b) knowledge of said falseness or scienter
   c) intent to defraud – ie intent to induce reliance
   d) justifiable reliance
   e) resulting damages.

35. In this case, the fraud by which Peter Szanto has been damaged is that the defendants (singly or jointly) intentionally perpetrating their improper use of plaintiff's name and identity.

36. At all times defendants knew that their use of plaintiff's identity

Complaint - page 14

without plaintiff's permission or knowledge was a knowing false, improper / and mis- representation of plaintiff.

37. Defendants despicable intent was at all times to defraud lenders into believing that borrowings in the name of Peter Szanto were actually undertaken by Peter Szanto.

38. Defendants did induce lenders and did defraud lenders by pretending that they – the defendants jointly or singly – were Peter Szanto.

39. There was justifiable reliance on defendants' representations by financial institutions because defendants were able to present sufficient identifying material so as to be successfully believed to be plaintiff –even though those impersonations were knowingly false.

40. Plaintiff was injured by the defendants fraud, because he now faces tax liability on the amount of <u>**$292,868.**</u>$^{00}$ which moneys were never received by – nor ever in – his possession.

### Third Cause of Action for Fraudulent Transfer

41. California Civil Code § 3439 explains the elements of law and facts necessary to maintain and prove-up the facts of a cause of action based on fraudulent transfer.

42. A claim upon fraudulent transfer exists when a transfer of property has been made or an obligation has been incurred with

Complaint - page 15

intent to defraud the lawful owner of property, and / or of any
expectancy of property.

43.  A claim upon fraudulent transfer also arises when the owner of
property is induced to transfer property without receiving
reasonable or truthful equivalent value in exchange therefore.

44.  Here, plaintiff contends that at all times, herein, defendants
sole purpose and intent was fraudulently to transfer assets
obtained in Peter Szanto's name into their own accounts.

45.  Plaintiff alleges, upon the facts related herein, and additional
facts which may be discovered and proved, that all transfers
made, property owned and / or obligations incurred by the
defendants regarding moneys obtained by the use of Peter
Szanto's name and identity were fraudulent because these
activities were made and / or undertaken:

(a) With actual intent to hinder, delay or defraud plaintiff'
learning of the theft of his identity.

(b) Transfers by defendants were made and undertaken
without plaintiff receiving a reasonably equivalent
amount of value regarding money obtained in plaintiff's
name.

46.  Here all of the following factors which prove-up the elements of
a cause of action for fraudulent transfers were present:

Complaint - page 16

a) The transfers to defendants were intentionally made by insiders Victor and Anthony Szanto with the intent to defraud Peter Szanto and to deprive Peter Szanto of assets to which he was rightfully entitled (ie, money obtained using Peter Szanto's name, identity and credit worthiness).

b) At all times the defendants retained control of all property transferred. Persolve, Account Resolution Associates, Victor Szanto and / or Anthony Szanto currently have complete and unfettered use and enjoyment of all those assets.

c) All transfers were concealed from Peter Szanto.

47. Upon the law and facts presented, plaintiff alleges that defendants currently hold, posses and profit from the fraudulently acquired assets, accretions to assets and their daily operation for profit from the assets which were fraudulently transferred to the defendants.

48. Plaintiff thereon asks for relief based on the intentional fraudulent transfers described above by which he was deprived of property that is his -- **to the extent that said moneys were acquired by use of plaintiff's name and identity**.

49. Relief is requested either as restitution of fraudulently transferred money or separate payment thereof in an amount of approximately **$292,868.<u>$^{00}$</u>**.

Complaint - page 17

## Fourth Cause of Action for Intentional Infliction of Emotional Distress

50.  The elements necessary to prove the tort of intentional infliction of emotional distress are:

i.   extreme and outrageous conduct by the defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress. Here, the defendants actions in stealing plaintiff's identity so as to purloin at least **$292,868.**$^{00}$ can readily be understood to cause emotional suffering to a person who learns of such behavior for the first time by receiving a tax bill from the Internal Revenue Service!

ii.   plaintiff has suffered, and continues to suffer, severe and extreme emotional distress since learning of the theft of his identity.

iii.   the actual and proximate causation of plaintiff's emotional distress was the defendants' outrageous conduct of theft of Peter Szanto's identity

iv.   defendants theft of plaintiff's identity caused injury, harm and damage to plaintiff in an amount to be shown by proof.

//

51. Thereon, Peter Szanto seeks relief in an amount to be shown by proof, but already known to be greater than **$292,868.**[00] for medical bills and general damages suffered from emotional distress and psychic injury caused by defendants' conduct .

52. Plaintiff further requests costs of this action and such other and further relief as this Court may deem appropriate.

### CLAIMS AS TO ADDITIONAL DOE DEFENDANTS

53. All of the claims made herein are reiterated as to Doe defendants who are not presently known, but who may be discovered and joined into this action as further facts are revealed.

DATED 9 February 2015 _____ Peter Szanto

Complaint - page 19

| Form **4549-A**<br>(Rev. March 2013) | Department of the Treasury-Internal Revenue Service<br>**Income Tax Examination Changes**<br>**(Unagreed and Excepted Agreed)** | | Page __1__ of __2__ | |
|---|---|---|---|---|

| Name and Address of Taxpayer<br><br>PETER & SUSAN SZANTO<br>11 SHORE PINE DR<br>NEWPORT COAST  CA  92657-1544 | | Taxpayer Identification Number | Return Form No.:<br>1040 | |
| | | Person with whom<br>examination<br>changes were<br>discussed. | Name and Title: | |

| | | | Period End | Period End |
|---|---|---|---|---|
| **1.  Adjustments to Income** | | 12/31/2010 | | |
| a. Cancellation of Debt Income | | 292,868.00 | | |
| b. Substitute Payments Income | | 1,093.00 | | |
| c. Itemized Deductions | | 1,588.00 | | |
| d. Exemptions | | 7,300.00 | | |
| e. | | | | |
| f. | | | | |
| g. | | | | |
| h. | | | | |
| i. | | | | |
| j. | | | | |
| k. | | | | |
| l. | | | | |
| m. | | | | |
| n. | | | | |
| o. | | | | |
| p. | | | | |
| **2.  Total Adjustments** | | 302,849.00 | | |
| **3.  Taxable Income Per Return or as Previously Adjusted** | | (17,111.00) | | |
| **4.  Corrected Taxable Income** | | 285,738.00 | | |
| | Tax Method | SCHEDULE D | | |
| | Filing Status | Joint | | |
| **5.  Tax** | | 65,811.00 | | |
| **6.  Additional Taxes / Alternative Minimum** | | 5,905.00 | | |
| **7.  Corrected Tax Liability** | | 71,716.00 | | |
| **8.  Less** a. | | | | |
| **Credits** b. | | | | |
| c. | | | | |
| d. | | | | |
| **9.  Balance** *(Line 7 less total of Lines 8a thru 8d)* | | 71,716.00 | | |
| **10. Plus** a. | | | | |
| **Other** b. | | | | |
| **Taxes** c. | | | | |
| d. | | | | |
| **11. Total Corrected Tax Liability** *(Line 9 plus Lines 10a thru 10d)* | | 71,716.00 | | |
| **12. Total Tax Shown on Return or as Previously Adjusted** | | 0.00 | | |
| **13. Adjustments to:** a. See Attached | | (800.00) | | |
| b. | | | | |
| c. | | | | |
| **14. Deficiency-Increase in Tax or (Overassessment - Decrease in Tax)**<br>*(Line 11 less Line 12 adjusted by Lines 13a through 13c)* | | 72,516.00 | | |
| **15. Adjustments to Prepayment Credits-Increase (Decrease)** | | | | |
| **16. Balance Due or (Overpayment)** - *(Line 14 adjusted by Line 15)*<br>*(Excluding interest and penalties)* | | 72,516.00 | | |

Catalog Number 23110T                          www.irs.gov

| Form **4549-A** (Rev. March 2013) | Department of the Treasury-Internal Revenue Service **Income Tax Examination Changes** (Unagreed and Excepted Agreed) | | Page 2 of 2 |
|---|---|---|---|
| Name of Taxpayer PETER & SUSAN SZANTO | | Taxpayer Identification Number | Return Form No. 1040 |

| 17. Penalties/ Code Sections | Period End 12/31/2010 | Period End | Period End |
|---|---|---|---|
| a. Delq- IRC 6651 (a) (1) | 17,502.76 | | |
| b. Accuracy- IRC 6662 | 14,503.20 | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| 18. Total Penalties | 32,005.96 | | |
| Underpayment attributable to negligence: *(1981-1987)* A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to fraud: *(1981-1987)* A tax addition of 50 percent of the interest due on the underpayment will accrue until it is paid or assessed. | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT)*. Interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC 6621(c). | 0.00 | | |
| 19. Summary of Taxes, Penalties and Interest: | | | |
| a. Balance due or *(Overpayment)* Taxes – *(Line 16, Page 1)* | 72,516.00 | | |
| b. Penalties *(Line 18)* - computed to 12/09/2014 | 32,005.96 | | |
| c. Interest *(IRC § 6601)* - computed to 01/08/2015 | 12,229.61 | | |
| d. TMT Interest - computed to 01/08/2015  *(on TMT underpayment)* | 0.00 | | |
| e. Amount due or refund - *(sum of Lines a, b, c and d)* | 116,751.57 | | |

**Other Information:**

IRC 6404(g) does not apply.

| Examiner's Signature: Name John Reed | Employee ID: 0246270 | Office: | Date: 12/09/2014 |
|---|---|---|---|

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you underreport your interest, dividend, or patronage dividend income you earned and do not pay the required tax. The IRS may order backup withholding *(withholding of a percentage of your dividend and/or interest payments)* if the tax remains unpaid after it has been assessed and four notices have been issued to you over a 120-day period.

Catalog Number 23110T                    www.irs.gov                    Form **4549-A** (Rev. 3-2013)